IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 15, 2025, at Nashville

**ANTONIO DODSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 11-00787          Chris B. Craft, Judge**

_____

**No. W2024-01439-CCA-R3-PC**
_____

A Shelby County jury convicted the Petitioner, Antonio Dodson, of three counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated rape, one count of aggravated burglary, and one count of employing a firearm during the commission of a dangerous felony.  On appeal, this court affirmed the trial court's judgments against the Petitioner.  *State v. Sherrod and Dodson*, W2015-02022-CCA-R3-CD, 2017 WL 1907723 at *1 (Tenn. Crim. App. May 9, 2017) *perm. app. denied* (Tenn. Sept. 22, 2017).  The Petitioner filed a petition for post-conviction relief, claiming ineffective assistance of counsel.  After a hearing, the post-conviction court denied relief.  The Petitioner appeals, maintaining that he received the ineffective assistance of counsel and that his due process rights were violated.  After review, we affirm the post-conviction court's judgment

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Terrell L. Tooten, Memphis, Tennessee, for the appellant, Antonio Dodson.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Scot Bearup, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

A Shelby County grand jury indicted the Petitioner and his co-defendants, Jarvis Sherrod and Lorenzo McKinney, for three counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated rape, one count of aggravated

burglary, and one count of employing a firearm during the commission of a dangerous felony.[1] The Petitioner filed a motion to sever his case from co-defendant Sherrod's case. The Petitioner asserted that co-defendant Sherrod's "improper behavior" in court might prejudice the Petitioner at trial. The motion was denied, and the Petitioner and co-defendant Sherrod were tried together. Co-defendant McKinney entered a plea agreement with the State and testified against his co-defendants.

In the direct appeal, this court briefly summarized the evidence as follows:

> On August 8, 2010, and into the early morning hours of August 9, 2010, the Defendants, along with their co-defendant, Lorenzo McKinney, invaded the home of Reno Stafford and Paula Diana and held them captive, along with Stafford's girlfriend, S.C. The Defendants burglarized the home, made multiple trips to the ATM to withdraw money from Stafford's account, and raped and sexually assaulted S.C.

A jury convicted the Petitioner as charged, and the trial court imposed a forty-four-year sentence. The Petitioner appealed, asserting that the trial court erred by: (1) denying his motion to sever; (2) allowing improper closing argument; (3) allowing the victims' prior consistent statements at trial; (4) allowing improper expert testimony; and (5) denying his motion to dismiss count ten of the indictment. The Petitioner also challenged the sufficiency of the evidence on two of the three counts of especially aggravated kidnapping. This court affirmed the trial court's judgments, and the supreme court denied the Petitioner's application for permission to appeal. *Sherrod*, 2017 WL 1907723 at *1.

In April 2018, the Petitioner timely filed a *pro se* petition for post-conviction relief and later, after appointment of counsel, three amended petitions. In his initial petition, the Petitioner claimed: (1) the evidence was insufficient to support his convictions; (2) the State committed a *Brady* violation by failing to disclose "all records and documents" related to co-defendant McKinney's plea agreement; (3) the trial court erred when it imposed consecutive sentencing; and (4) ineffective assistance of counsel. As to the ineffective assistance of counsel claim, the Petitioner asserted that his trial counsel ("Counsel") failed "to investigate, prepare and speak to witnesses," failed "to prepare for trial" by investigating "legitimate justifiable defenses," and failed "to raise in the motion for a new trial that Petitioner's convictions for two counts of aggravated robbery violated double jeopardy."

---

[1] The Petitioner's co-defendants were also indicted on additional charges related to this incident.

The first amended petition added that Counsel was ineffective for failing to: (1) request a curative limiting jury instruction on prior consistent statements; (2) seek a severance based on co-defendant Sherrod's successful motion to continue; (3) object to testimony from "a custodian of records"; and (4) make objection to the State's improper closing argument. The amended petition also asserted that appellate counsel was ineffective for failing to provide the motion to sever transcript in the appellate record and failing to argue and preserve the consecutive sentencing issue on appeal.

In the second amended petition, the Petitioner added a claim that he was deprived of Due Process when he was not allowed to complete the twenty-year plea agreement with the State because his co-defendant refused to accept a plea. He also asserted that the State's opposition to his pleading guilty "open" was "clearly prejudicial and unfair." Finally, he added that there was newly discovered evidence about police officer Eric Kelly that raised concern regarding an evidentiary chain of custody. Based upon the newly discovered evidence about Eric Kelly, the Petitioner requested that the post-conviction court order the State to produce "any and all information relating to the chain of custody of the evidence collected in this case."

The third and final amended petition asserted that the Petitioner had been denied his right to a speedy trial because the State did not honor the April 17, 2013 plea agreement, thereby forcing the Petitioner to go to trial at the much-delayed date of April 6, 2015.

The post-conviction court held a hearing and the parties presented the following evidence: Counsel testified that he was appointed to represent the Petitioner. He explained that the case arose out of a home invasion where a mother, her son (a small time drug dealer), and the son's girlfriend were in the residence. The defense theory was that the girlfriend was also in a relationship with the Petitioner and was "in on the robbery" thereby reducing the offenses to "just a robbery" and eliminating the rape.

When asked to describe co-defendant Sherrod, Counsel stated, "[a]n absolute animal." He explained that co-defendant Sherrod "acted out in court several times and in the jail." His behavior necessitated guards escorting co-defendant Sherrod to court. Co-defendant "Sherrod's behavior was a constant problem throughout all proceedings, before trial, during trial, at trial, after trial. Based upon this impression, Counsel attempted to "constantly try to be severed" from co-defendant Sherrod; however, the motions were denied.

Counsel recalled that the Petitioner agreed to a plea offer from the State and signed the agreement. Once in the courtroom, however, the State "attempted to revoke [the] offer." At the time of the Petitioner's trial, Counsel had been practicing criminal law for eight years. In his experience, this was the first time Counsel had ever had a signed

agreement "somehow taken away." Counsel confirmed that the plea negotiations and agreement were not contingent on co-defendant Sherrod's decisions regarding a plea agreement.

At some point after the agreement with the State "fell apart," the Petitioner attempted to plead open. The State opposed an open plea, and the trial court did not allow the Petitioner to plead. Counsel testified that he did not believe that the State had a right to a jury trial and could thwart a defendant's decision to plead guilty with the trial court to sentence at its discretion. Counsel filed a motion arguing that the State was estopped from withdrawing the plea agreement in an attempt to enforce the agreement, but the motion was denied.

Counsel recalled that there were two delays to the trial but did not consider them significant delays. One was co-defendant Sherrod's "demand" for repeat testing of the DNA related to the case. The second delay was because co-defendant Sherrod fired appointed counsel right before trial and retained a new attorney.

Counsel was aware of Officer Kelly's improper conduct but not until several years after the Petitioner's trial when a case "blew the lid off Mr. Kelly."

On cross-examination, Counsel clarified that a guilty plea offer was extended to the Petitioner. Counsel spoke with the Petitioner about the offer, drafted the paperwork, and the Petitioner signed it. Counsel then presented the paperwork to the State. The State refused to enter the agreement unless the Petitioner's guilty plea was concurrent with co-defendant Sherrod's guilty plea, because the State did not want to sever the defendants. Counsel agreed that he argued his frustration about the State's position, but "the Court agreed with the State that unless the State was agreeable to the plea, then it would not be accepted."

Counsel testified that following the rejection of the negotiated plea, Counsel attempted to submit an open plea to the trial court. The State objected on the basis of the same severance issue, and Counsel argued, unsuccessfully, that the Petitioner should be allowed to plea open.

Counsel agreed that he also filed a motion for a continuance on the Petitioner's behalf "to get the bench work for the underlying DNA report." Counsel reflected that this continuance was also a strategy for trying to "get away from [co-defendant] Sherrod."

Counsel clarified the defense theory, recalling, "the victim's boyfriend, who was also a named victim in this case, had been cheating on her. She was angry about that. She was vindictive and set up this robbery where people would come in and . . . beat up her

boyfriend." He went on to state that, "the theory was that [co-defendant] McKinney brought along [co-defendant] Sherrod. Both men were much older than [the Petitioner], and [co-defendant] Sherrod . . . got wildly out of . . . control from what they . . . had, you know, foolishly planned." Counsel stated that he cross-examined the victim about the defense theory. Further, he also questioned both the boyfriend and the boyfriend's mother about the theory, and "they agreed with it."

Counsel sought a defense investigator through Rule 13 funds, and it was granted. The investigator spoke with the victim's boyfriend and the boyfriend's mother. Counsel described them as "fairly cooperative." He qualified that they "weren't rooting for us [at] trial, but they had their suspicions" about the victim. Counsel did not recall the Petitioner ever providing him with a list of witnesses. He stated that because they had an appointed investigator, he would have sent the investigator to talk to anyone the Petitioner identified. Counsel said that he had a "good relationship" with the Petitioner and visited him regularly.

Counsel testified that he filed a response to the State's motion for consecutive sentencing and the notice of enhancement. Counsel successfully sought a continuance for the purpose of preparing a rebuttal to the State's enhancement factors.

On redirect examination, Counsel identified a fax of the State's offer. He said he took the fax to the Petitioner, discussed it with him, and then drafted a plea agreement. At a court date short of filing the agreement, the "State refused to endorse it was this offer, which was a 20 year offer for the whole case." Counsel agreed that by proceeding to trial, the Petitioner received "a sentence substantially in excess of" the twenty-year offer.

After hearing this evidence, the post-conviction court issued an order denying relief. It is from this judgment that the Petitioner appeals.

## II. Analysis

On appeal, the Petitioner maintains that Counsel was ineffective in multiple instances and that the Petitioner was denied due process of law because the plea agreement was not enforced and the trial court refused to allow him to plead open. The State responds that the Petitioner has waived our review of the ineffective assistance of counsel issues because the Petitioner did not raise these issues in his petition or at the hearing, and the post-conviction court did not rule on the issues. As to the issues related to Due Process, the State contends that this court is precluded from review of the issues because they were not raised on direct appeal.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee

Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result.

*Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

## A. Ineffective Assistance of Counsel

The Petitioner raises several issues with respect to Counsel's performance. The Petitioner asserts that trial counsel failed to argue for the enforcement of the plea agreement and that appellate counsel failed to raise the issue on appeal. He then argues that he was denied the right to plead open, denied the right to a speedy trial, and denied relevant and material evidence regarding Officer Kelly.

### 1. Enforcement of the Plea Agreement

The Petitioner argues that "trial and appellate counsel failed to argue for the enforcement of the State's plea agreement." As the State correctly notes, this issue was not included in the Petitioner's petition or any of the amended petitions. Further, evidence of Counsel's or appellate counsel's deficiency in this respect was not addressed at the hearing in such a way that the post-conviction court was aware of the issue. Therefore, the post-conviction court did not rule on these issues in its order denying relief.

A post-conviction petitioner generally waives a ground for relief where he or she does not include the ground in the petition. *See* T.C.A. § 40-30-110(c) ("Proof upon the petitioner's claim or claims for relief shall be limited to evidence of the allegations of fact in the petition."); Tenn. Sup. Ct. R. 28, § 8(D)(4) ("The hearing shall be limited to issues raised in the petition."). The statutes also provide that a petitioner may amend the petition within thirty days or at any other time upon a showing of good cause. *See* T.C.A. § 40-30-107(b)(2). Further, the post-conviction court may permit an amendment to the petition, even during the evidentiary hearing, "when the presentation of the merits of the cause will otherwise be subserved." Tenn. Sup. Ct. R. 28, § 8(D)(5).

Importantly, though, this court does not have the authority to consider a post-conviction issue that was not raised in the original petition or a recognized amendment. *See State v. Bristol*, 654 S.W.3d 917, 927 n.4 (Tenn. 2022) ("The legislature has eliminated this discretion [to consider unpresented or unpreserved issues] in post-conviction proceedings."). Our supreme court has made clear that we may consider a post-conviction issue on appeal only when that issue (1) was formally raised in the post-conviction petition or an amendment; or (2) was argued at the evidentiary hearing and was decided by the post-conviction court without objection by the State. *See Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) ("Tennessee appellate courts may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection.").

In this case, the Petitioner did not raise this issue in his original petition or in any of the amended petitions. Appellate counsel did not testify at the post-conviction hearing about the decisions he made with respect to issues on appeal. Counsel testified that he argued that the State should not be able to "revoke" the agreement, but the trial court did not agree. This evidence directly contradicts the Petitioner's assertion that Counsel "failed to argue for the enforcement of the State's plea agreement." Finally, the post-conviction court did not address this issue because it was not raised in the post-conviction petition, as amended, or clearly raised as a freestanding issue during the post-conviction hearing. *Id.*

Accordingly, we conclude that the Petitioner has waived this issue.

## 2. Remaining Issues

The Petitioner also contends on appeal that: the trial court denied the Petitioner his right to plead open; the State violated his right to a speedy trial; and the State failed to produce "material evidence regarding Officer Kelley [sic]." The Petitioner, however, does not identify Counsel's deficiency with respect to any of these issues or make any connection between Counsel's representation and the trial court's precluding him from pleading open, the State's alleged intentional delay of the trial to create a strategic advantage, and the State's alleged *Brady* violation. Further, there is no argument as to how Counsel's representation resulted in prejudice to the defense.

Accordingly, because the Petitioner has failed to prove these issues by clear and convincing evidence, he is not entitled to relief.

## B. Alleged Due Process Violation

The Petitioner argues that he was denied Due Process of law because the plea agreement was not enforced and the trial court refused to allow him to plead open. The

State contends that the Petitioner has waived our review of these issues for failure to raise them on direct appeal. We agree with the State.

An issue is considered waived, and no longer grounds for relief, "if the petitioner personally or through an attorney fail[s] to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[,]" with two limited exceptions. T.C.A. § 40-30-106(g) (2018). The two exceptions are not applicable in this case.[2] This Court has held that the language of the Act controls the scope of issues on review and "expressly prohibits post-conviction consideration of issues deemed 'previously determined' or 'waived.'" *State v. West*, 19 S.W.3d 753, 754 (citing the previously-repealed post-conviction statute but stating that this interpretation applies equally to the current Act); *see* T.C.A. § 40-30-110(f) (2018) ("There is a rebuttable presumption that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived."). These waiver restrictions are necessary to avoid "an open- and possibly never-ending approach to post-conviction review." *West*, 19 S.W.3d at 756.

The Petitioner appealed his convictions after a jury trial and asserted that the trial court erred by: (1) denying his motion to sever; (2) allowing improper closing argument; (3) allowing the victims' prior consistent statements at trial; (4) allowing improper expert testimony; and (5) denying his motion to dismiss count ten of the indictment. The Petitioner also challenged the sufficiency of the evidence on two of the three counts of especially aggravated kidnapping. He did not, however, challenge the trial court's decisions with respect to any plea agreement or attempt by the Petitioner to plead guilty.

Accordingly, we conclude that the Petitioner has waived these claims due to his failure to raise them on direct appeal.

### III. Conclusion

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
s/ *ROBERT W. WEDEMEYER*
ROBERT W. WEDEMEYER, PRESIDING JUDGE

---

[2] The exceptions are: "(1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or (2) The failure to present the ground was the result of state action in violation of the federal or state constitution."